246 P.3d 16 (2010)
239 Or. App. 317
Patricia A. PARKER and Timothy Finch Ousley, Petitioners-Appellants,
v.
CITY OF ALBANY, Respondent-Respondent.
0710289; A138751.
Court of Appeals of Oregon.
Argued and Submitted November 24, 2009.
Decided December 8, 2010.
David Hunnicutt, Tigard, argued the cause for appellants. With him on the briefs were *17 Ross Day and Oregonians in Action Legal Center.
James Delapoer, Albany, argued the cause for respondent. With him on the brief was Long, Delapoer, Healy, McCann & Noonan, P.C.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and ROSENBLUM, Judge.
ARMSTRONG, J.
Petitioners appeal a judgment that upheld a City of Albany decision that petitioners had challenged by writ of review.[1] The challenged decision determined that petitioners' real property had been specially benefited by the city's construction of public improvements adjoining petitioners' property and imposed an assessment for petitioners' share of the cost of the improvements. On appeal, petitioners' only contention is that the court erred in upholding the city's decision because, in petitioners' view, requiring them to pay the portion of the city's assessment that represents their share of the city's cost to acquire a portion of their property for the public improvement violates the Fifth Amendment to the United States Constitution. We disagree with petitioners and, accordingly, affirm.
The facts are undisputed. The city began forming a local improvement district (LID) in 2003 to provide financing for a public project to extend North Albany Road and to make related water, sewer, and intersection improvements. To extend the street, the city needed to acquire the real property over which the street would run, including a portion of petitioners' property. The city determined that petitioners' property that adjoined the proposed extension of North Albany Road should be included within the LID because their property would receive a special benefit from the construction of the improvements, thereby making it appropriate for them to pay a share of the city's cost to construct the improvements.[2] In August 2006, the city brought a condemnation action against petitioners to acquire the portion of petitioners' land that was necessary for the project. That action was resolved through a stipulated general judgment, and petitioners were paid an agreed-upon amount of $22,500 as compensation for the acquisition of their land. In March 2007, the city established the assessments for the property in the LID at $2,335.92 per lot, which included the city's cost to acquire the land used to accomplish the project. Petitioners' property was determined to be two lots; therefore, their assessment was $4,671.84. Of that assessment, $196.18 represents the amount that petitioners calculate they were required to pay for their share of the city's cost of acquiring their land for the project.
Petitioners filed a petition for writ of review, arguing, most importantly for this appeal, that the city could not lawfully assess them for their portion of the cost that the city had incurred to acquire land for the *18 project from them. The trial court disagreed with petitioners and, consequently, upheld the city's decision.
On appeal, petitioners contend that the trial court erred in upholding the city's LID assessment decision. Petitioners argue that, to the extent that the city's assessment requires them to pay the city for their share of the cost of acquiring their property for the project, the assessment violates the Takings Clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, because petitioners will effectively be required to pay some of the cost of the taking of their own property, which, according to petitioners, means that they will not have received just compensation for their land, rendering the assessment unconstitutional. In response, the city contends that petitioners' settlement of the condemnation proceeding and acceptance of the stipulated compensation satisfied the Fifth Amendment's just compensation requirement for the city's acquisition of petitioners' land and that the Fifth Amendment does not exempt petitioners from paying their full share of the LID assessment. For the reasons below, we agree with the city.
We review a writ of review decision for legal error. Johnson v. Civil Service Board, 161 Or.App. 489, 498, 985 P.2d 854, modified on recons., 162 Or.App. 527, 986 P.2d 666 (1999). Pursuant to the applicable writ of review statutes, ORS 34.030 and ORS 34.040(1), a trial court reviews a decision of a lower tribunal to determine if the tribunal committed any of five enumerated types of error. Those types of error include "[r]ender[ing] a decision that is unconstitutional." ORS 34.040(1)(e). Here, the trial court concluded that, contrary to petitioners' contention, the city's LID assessment decision did not violate the Fifth Amendment. Petitioners argue on appeal that the court erred in reaching that conclusion. Accordingly, our review is limited to whether the trial court correctly determined that the city had not violated the Fifth Amendment in the manner claimed by petitioners.
Under the Fifth Amendment, private property may not be taken for public use without just compensation. E.g., Boise Cascade Corp. v. Board of Forestry, 216 Or. App. 338, 344, 174 P.3d 587 (2007), rev. den., 344 Or. 390, 181 P.3d 769, cert. den., ___ U.S. ___, 129 S.Ct. 346, 172 L.Ed.2d 46 (2008).[3] Just compensation is normally measured by the market value of the property on the date of the taking. E.g., United States v. 50 Acres of Land, 469 U.S. 24, 25-26, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984). The power of eminent domain, that is, the power to acquire property for public use through condemnation proceedings, is distinct from the power of a government to tax or to otherwise raise revenue for its operations. See, e.g., Norwood v. Baker, 172 U.S. 269, 277, 19 S.Ct. 187, 43 L.Ed. 443 (1898) (observing that "[t]he taking of the plaintiff's land for the street [improvement] was under the power of eminent domain[,] * * * a power which this court has said was the offspring of political necessity, * * * [b]ut the assessment of the abutting property for the cost and expense incurred by the Village [to accomplish the improvement] was an exercise of the power of taxation"). Because of that distinction, we analyze the city's appropriation of petitioners' property and its imposition of the assessment in turn.
Here, the city properly exercised its eminent domain power by instituting a condemnation action against petitioners, which was settled by the parties. Petitioners accepted $22,500 as compensation for the city's acquisition of the portion of petitioners' property that the city needed for the street improvement project. As a result, they received just compensation for their land in satisfaction of the requirements of the Fifth Amendment. At that point, petitioners no longer had any rights in the property that the city had acquired *19 from them, and, with respect to their remaining property in the LID, they stood on equal footing with the other property owners in the LID.
The city then used its power to raise revenue through the LID by imposing an assessment against the property in the LID owned by petitioners and by the other affected property owners for a portion of the costs that the city had incurred to construct the public improvements that had specifically benefited the properties in the LID, viz., the new access to the extension of North Albany Road and the water, sewer, and intersection improvements. The city determined the value of the special benefit to petitioners' property from the public improvements to be $30,000, and the assessment required petitioners to pay $4,671.84 as their proportionate share of the cost to create that benefit. As part of the assessment, all of the property owners in the LID were required to pay a prorated amount for the acquisition of the property used to accomplish the project, reflecting the fact that all of the property owners were specially benefited by the project. Petitioners, standing on equal footing with the other property owners, were equally liable for the cost of the project, including the cost to acquire the land for it. Cf. City of Eugene v. Wiley et ux, 225 Or. 327, 329, 358 P.2d 286 (1960) ("`The benefits represented by * * * special assessments must be paid for by the condemnee in the same manner and in the same proportion as other property owners benefited by the improvement.'" (quoting City of Lincoln v. Marshall, 161 Neb. 680, 684-85, 74 N.W.2d 470 (1956))).
Petitioners contend, however, that the Fifth Amendment's Takings Clause exempts them from being required to pay their share of the LID assessment that represents the city's cost to acquire their land for the project. They principally rely on Scott v. City of Toledo, 36 F. 385 (CCND Ohio 1888), as support for that proposition, but Scott is inapposite.
In Scott, the City of Toledo, Ohio, had adopted an ordinance under which the city was to construct a public road over land owned by two landowners. The ordinance took the land on which the road would be constructed from the landowners, without paying them any compensation for the land, and required the landowners to pay the full cost to construct the road abutting their properties. The city provided no hearing or mechanism by which the affected landowners could challenge the city's implicit determination that the special benefits accruing to the adjoining properties made it appropriate to require the owners to pay to construct the road.
The federal court held that the ordinance denied the landowners due process of law, in violation of the Fourteenth Amendment, in two, independent respects: by taking their land for the road without just compensation and by imposing an assessment against them for the cost of constructing the road without giving them an opportunity to dispute the validity or amount of it. As to the taking of the land, it is unclear whether the ordinance's practical effect was to simply take the land without compensation or to require the affected landowners to pay the city, through the assessment, the full cost to take their land. In either event, the court held that an ordinance that simply and directly did thatthat is, that took land from people for public use and paid them nothing for it violated due process.
The city's actions in Scott stand in stark contrast to the city's actions in this case. Here, the city brought a condemnation action to acquire a portion of petitioners' property for the street project and, by settlement of that action, paid them just compensation for the property that the city acquired. It then completed an LID process by which it assessed against the landowners who were specially benefited from construction of the project a portion of the total cost of the project. By its nature and focus, the LID process is not directed toward recapturing from a landowner whose property has been acquired by condemnation the money paid to the landowner for the property. Rather, it is directed toward determining the amount that landowners should pay a local government for the special benefit that the landowners have received from the government's construction, at the government's expense, of a public improvement, such as a road. That process *20 bears no relationship to the process and result in Scott.
Furthermore, the Takings Clause generally does not apply to the imposition of taxes, fees, and similar monetary assessments by the government to fund or cover the cost of its operations. There is no reason to question the application of that principle to the LID assessment imposed against the property owners in this case.[4]
Contrary to petitioners' contention on appeal, the city's decision to impose an assessment against petitioners' property for petitioners' share of the cost of the LID did not violate the Fifth Amendment. Therefore, the trial court did not err by affirming the city's decision on writ of review.
Affirmed.
NOTES
[1] Although the trial court entered a judgment that denied petitioners' writ of review petition, the proper resolution of the petition required the court to decide whether the city had committed one of the five types of error listed in ORS 34.040 that are subject to correction by writ of review and to affirm, modify, reverse, or annul the city's decision accordingly. Hence, we understand the court to have determined that the city had not committed any of the enumerated types of error and, therefore, that the court's judgment was intended to affirm the city's decision.
[2] Petitioners challenged the inclusion of their property in the LID in an earlier writ of review proceeding, contending that their property would realize no special benefit from the city's proposed project. The trial court concluded that it lacked subject matter jurisdiction over the proceedingbecause the final stage of the LID process had not been reachedand we agreed. Parker v. City of Albany, 208 Or.App. 296, 298, 144 P.3d 976 (2006).

Petitioners properly challenged the inclusion of their property in the LID in their subsequent petition for writ of review, the rejection of which is the subject of this appeal. However, on appeal, petitioners do not challenge the trial court's determination that petitioners' property within the LID received a special benefit from the city's project. Accordingly, the propriety of including petitioners' property in the LID is not before us.
For a background discussion of the process by which local governments in Oregon use LID's to construct public improvements, see generally Regulation and Taxation of Real Estate §§ 2.12-2.70 (OSB CLE 1995), 2-5 to 2-11 (OSB CLE Supp 2003).
[3] The Oregon Constitution imposes a comparable requirement. See Or. Const., Art. I, § 18. Because petitioners did not contend in the trial court or argue on appeal that the city's decision violates Article I, section 18, we decline to assess the legality of the city's decision under that provision. See, e.g., State v. Mendez, 308 Or. 9, 19, 774 P.2d 1082 (1989) (limiting discussion to defendant's federal constitutional claim where he "failed to brief or argue any independent state constitutional theory").
[4] In other words, to the extent that there could be exceptions to the general inapplicability of the Takings Clause to the imposition of taxes, fees, and other monetary assessments by the government, cf., e.g., United States v. Sperry Corp., 493 U.S. 52, 59-64 & nn 7-9, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) (discussing Takings Clause and its potential application to governmental imposition of fees) this is not a case that presents that question. Moreover, if petitioners were correct about the Takings Clause, then the cost of acquiring petitioners' property would likely be paid through an increased assessment to the other property owners, thereby treating the property owners within the LID unequally.