Argued and submitted September 30, 1988, order denying motion for new trial vacated; judgment affirmed January 11, reconsideration denied March 10, petition for review allowed May 16, 1989 (308 Or 33)

STATE OF OREGON,
*Respondent,*

*v.*

CHRISTOPHER BLAINE BOOTS,
*Appellant.*

(10-86-07965; CA A44019 (Control), A47750)
(Cases Consolidated)

767 P2d 450

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the briefs was Gary D. Babcock, Public Defender, Salem.

Timothy Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were David B. Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge pro tempore, and Graber and Riggs, Judges.

RIGGS, J.

**RIGGS, J.**

Defendant appeals his conviction for aggravated murder. ORS 163.095. We affirm.

This case is a companion to *State v. Proctor,* 94 Or App 720, 767 P2d 453 (1989). The murder alleged in these cases occurred on June 7, 1983. The victim, Oliver, was found dead in the cooler of a convenience store in Springfield, his hands and feet bound with masking tape. He had been hit on the head with a pop bottle and shot three times in the head. Defendant reported the murder and was present when the police arrived. The police interviewed him several times that day and arrested him for the murder on June 24, 1983. He was released unconditionally on June 27, 1983, with no charges having been filed.

The District Attorney presented the case to the grand jury in August, 1983, but withdrew it before the grand jury could decide whether to return an indictment. Over the course of the next two years, defendant made a series of inculpatory statements to various witnesses. The case was eventually presented to a second grand jury, which returned an indictment on September 30, 1986. Defendant was tried and convicted by a jury, and the court sentenced him to life imprisonment with a 20-year minimum term.

■ Defendant's first assignment of error is the trial court's denial of his motion to dismiss the indictment for lack of a speedy trial. This assignment has two aspects: first, that the delay deprived defendant of his right to a speedy trial under Article I, section 10, of the Oregon Constitution, and, second, that the delay worked a deprivation of his right to due process of law. Article I, section 10, is directed only to unreasonable delay after a charge has been formally made. *State v. Dike,* 91 Or App 542, 544, 756 P2d 657, *rev den* 306 Or 660 (1988). Defendant does not claim that the postindictment delay in this case was too long. Thus, his constitutional claim, if any, lies in the alleged denial of due process.

■ The due process effect of preindictment delay is judged by a two-part test: "A defendant must show both substantial prejudice to his right to a fair trial and that the delay was done intentionally to gain a tactical advantage." *State v. Dike, supra,* 91 Or App at 544. Defendant has established

neither here. Although he claims prejudice by the delay, no evidence of prejudice was presented. Likewise, there is no evidence that the state delayed the indictment deliberately to gain a tactical advantage at trial. On the contrary, the record supports the state's assertion that it refrained from seeking an indictment only until its case against defendant was complete.

■ Another assignment of error deals with the trial court's denial of defendant's motion to dismiss or set aside the indictment as having been obtained in a second grand jury proceeding convened without permission of the court.[1] Defendant's argument is predicated on ORS 132.430.[2] That statute does not apply when the defendant has not been held to answer for a crime. *State v. Harwood,* 45 Or App 931, 937-38, 609 P2d 1312, *rev den* 289 Or 337 (1980). We have recently interpreted the phrase "held to answer," in the context of ORS 135.745, as meaning that the defendant has been "bound over by a magistrate after a preliminary hearing or held pursuant to an information filed by the district attorney." *State v. Schiff,* 93 Or App 301, 304, 762 P2d 319 (1988). The phrase has the same meaning in ORS 132.430. Defendant was not bound over by a magistrate or held pursuant to an information before the case was withdrawn from the first grand jury. He was not "held to answer" for the crime when he was released unconditionally and without charges having been filed after his first arrest.

■ Defendant also assigns as error the giving of this jury instruction:

"With regard to [the charge of aggravated murder], it is not

---

[1] We focus only on the statutory issue. Defendant's constitutional claim was not raised below, and we do not address it here.

[2] ORS 132.430 provides:

"(1) When a person has been held to answer a criminal charge and the indictment in relation thereto is not found 'a true bill,' it must be indorsed 'not a true bill,' which indorsement must be signed by the foreman and filed with the clerk of the court, in whose office it shall remain a public record. In the case of an indictment not found 'a true bill' against a person not so held, the same, together with the minutes of the evidence in relation thereto, must be destroyed by the grand jury.

"(2) When an indictment indorsed 'not a true bill' has been filed with the clerk of the court, the effect thereof is to dismiss the charge; and the same cannot be again submitted to or inquired of by the grand jury unless the court so orders."

necessary for all jurors to agree on the manner in which Aggravated Murder was committed. That is, some jurors may find that it was committed during the course of and in furtherance of Robbery in the First Degree, and others may find it was committed to conceal a crime or its perpetrator.[3] Any combination of twelve jurors agreeing that one or the other or both occurs is sufficient to establish this offense."

Defendant argues that the instruction deprived him of his statutory and constitutional rights to a unanimous jury verdict on each of the elements of the crime charged,[4] because it is possible that not all the jurors agreed that Oliver's murder was accompanied by any one particular aggravating circumstance.[5] Or Const Art I, § 11; US Const Amend XIV; ORS 136.450.

---

[3] Aggravated murder is defined in ORS 163.095:

" '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2) * * *

"* * * * *

"(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in 163.115(1)(b) [including murder committed during a first degree robbery].

"(e) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

[4] The state argues that defendant has not properly preserved the error, because he did not request that the jury be polled as to which theory of aggravated murder each member accepted, but this contention is without merit. ORCP 59H (made applicable to criminal trials by ORS 136.330) requires only that an objection be made and that a particularized exception be taken in order to preserve the error for appeal. Those requirements were satisfied here.

[5] In particular, defendant argues that it is possible that not all the jurors agreed that defendant, rather than an accomplice, shot the victim. Although ORS 163.095(2)(e) apparently would permit a defendant to be convicted of aggravated murder if an accomplice murdered the victim "in an effort to conceal the commission of a crime, or the identity of the perpetrator of a crime[,]" the jury in this case was not so instructed. The instruction given is:

"To establish the crime of Aggravated Murder, the State must prove beyond a reasonable doubt * * *

"* * * * *

"that the Defendant intentionally caused the death of Raymond John Oliver, another human being, in the course of committing the crime of Robbery in the First Degree, or in an effort to conceal the identity of the perpetrator of the crime."

That instruction does not admit of the possibility that defendant could be convicted of aggravated murder if anyone other than defendant committed the killing.

We addressed a similar issue in *State v. Hazelett*, 8 Or App 44, 492 P2d 501, *rev den* (1972), where the jury was instructed that not all of them needed to agree whether the defendant, accused of murder, had premeditated the crime or had committed felony murder, so long as they unanimously agreed that one or the other had occurred and therefore that defendant was guilty of murder. In upholding that instruction, we distinguished cases in which the jury was erroneously instructed that it need not agree as to which of several accused acts constituted the crime charged in the indictment:

> "This is not such a case. Here, there was only one act charged and proved—the act of taking the life of the victim. Whether this was done with premeditation or while attempting rape related to the defendant's mental state, and did not relate in any way to the act charged. Since the legal effect of committing the act is the same whether done with premeditation or while attempting rape, there is no reason to require the jury to unanimously agree on which of the two possible mental states, both equally culpable, defendant possessed at the time of the murder charged." 8 Or App at 47.

Similarly, in the present case, only one act—a homicide—was charged and proved. The consequences of the murder were the same whether defendant committed the killing in the course of the robbery or to conceal the robbery or the identities of its perpetrators. So long as all the jurors agreed that defendant committed aggravated murder, they need not have agreed as to the specific theory of aggravation.[6]

■ While defendant's appeal was pending in this court, he moved for a new trial on the basis of newly-discovered evidence. Defendant assigns as error the trial court's failure to grant a new trial. The trial court was without jurisdiction to consider the motion after the notice of appeal had been filed.

---

[6] We indicated in *State v. Hazelett, supra,* and *State v. Bruno,* 42 Or App 539, 600 P2d 948 (1979), *aff'd by equally divided court* 290 Or 159, 619 P2d 648 (1980), that the question presented here was controlled by *State v. Reyes,* 209 Or 595, 621-26, 308 P2d 182 (1957), but that case was concerned only with the issue of whether the District Attorney could be compelled to elect between alternative theories in framing the indictment. The present case, like *Hazelett* and *Bruno,* is concerned with the related, but distinct, issue of whether the *jury* must agree on a single theory in rendering its verdict. Recognizing that the Supreme Court has yet to rule on the question, two judges of that court have expressed the view that the instruction given here is erroneous. *State v. Fish,* 282 Or 53, 58-59, 577 P2d 500 (1978) (Linde and Lent, JJ., concurring).

*See* ORS 19.033(1);[7] *Ellis v. Roberts,* 302 Or 6, 9, 725 P2d 886 (1986). We express no opinion as to the issues raised by defendant's motion for a new trial. The motion remains pending in the trial court for decision after this appeal.

Defendant's remaining assignment of error is without merit.

Order denying motion for new trial vacated; judgment affirmed.

---

[7] ORS 19.033 applies in criminal cases. ORS 138.185(2).