Argued and submitted March 7, the decisions of the Court of Appeals and trial court affirmed May 16, 1989

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## MANUEL MENDEZ,
*Petitioner on Review.*

(TC C86-07-33019; CA A45058; SC S35704)

774 P2d 1082

Stephen A. Houze, Portland, argued the cause for petitioner on review. With him on the petition was Birkland & Houze, Portland.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant Mendez and his co-defendants Martinez and Contreras were indicted and jointly tried for murder, felony murder, and first degree kidnapping in connection with the death of Carlos Sevilla. This case is Mendez's appeal of his conviction of felony murder. He contends that the trial court erred in denying his motion for a new trial and in excluding certain hearsay evidence.[1] The issues are whether a less than unanimous verdict on a separately charged underlying felony is necessarily inconsistent with a unanimous verdict for felony murder, and whether exclusion of the hearsay evidence was error. The Court of Appeals affirmed without opinion. *State v. Mendez,* 93 Or App 429, 762 P2d 1069 (1988). We affirm.

At trial, prosecution witness Warren testified that she was present when Sevilla and Carl Moen came to a house where she lived with the three defendants. While Moen was in the bathroom, the three defendants seized Sevilla and took him to the basement, where they questioned him about his drug activities in competition with Contreras. Later, they brought Sevilla out of the basement wrapped in a blanket. Defendants left together, returning to the house more than an hour later without Sevilla. The following day Sevilla's body was found. He had been shot five times. The jury convicted defendant of felony murder and first degree kidnapping, but it acquitted him of murder. The jury had voted 12-0 for conviction of felony murder, 11-1 for conviction of first degree kidnapping, and 11-1 for acquittal of murder.

Defendant moved to set aside the felony murder verdict, arguing that the less than unanimous kidnapping verdict was inconsistent with the unanimous felony murder verdict. The trial court deferred ruling on that motion until sentencing. Defendant then asked the court to consider interviewing the jurors *in camera* "as to whether they understood the Court's instructions that a unanimous vote must be reached on Felony Murder, and that in order to do that, all 12 of them would have to have reached a unanimous verdict on the Kidnap, before considering a unanimous verdict on the Felony

---

[1] Defendant also assigns error to the trial court's denial of his motion to reconsider the verdict. The record does not show that he asked the court to order the jury to reconsider its verdict and his brief fails to set forth the motion and the ruling of the court *verbatim* as required by ORAP 7.19. Therefore, we will not consider the issue.

Murder." The court refused to do so and discharged the jury. At sentencing the court denied a motion by defendant for a new trial and entered judgment accordingly.[2]

## I.

Defendant first contends that the trial court erred in denying his motion for a new trial. He argues that because Oregon's Constitution and statutes require that murder verdicts be unanimous, there must be unanimity on the underlying felony before a verdict of felony murder may be returned. He argues that it was a logical and legal impossibility for one of the jurors to find that he had not committed the underlying crime of kidnapping[3] while finding him guilty of felony murder because the felony murder verdict necessarily required a unanimous finding of guilt on the kidnapping. He argues further that the "inconsistent" verdicts show that the jury was confused by the prosecutor's closing argument[4] and by the

---

[2] The court did not explicitly deny defendant's earlier motion to set aside the verdict. However, both motions were based on the ground of inconsistent verdicts and the court rejected that ground. *See infra,* note 6. In any event, defendant does not appeal the court's failure to set aside the verdict.

[3] ORS 163.225 provides in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found.

"(2) It is a defense to a prosecution under subsection (1) of this section if:

"(a) The person taken or confined is under 16 years of age; and

"(b) The defendant is a relative of that person; and

"(c) The sole purpose of the person is to assume control of that person."

ORS 163.235 provides in part:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom; or

"(b) To hold the victim as a shield or hostage; or

"(c) To cause physical injury to the victim; or

"(d) To terrorize the victim or another person."

[4] The prosecutor told the jury:

"Lastly, I guess, Mr. Mendez is asking you to acquit him on all of the charges, not just intentional murder or felony murder, but the kidnapping as well, which I think you heard overwhelming evidence he participated in by holding Carlos Sevilla in the basement with the gun, by moving the car with him in it, and

trial court's instructions.[5] Standing alone, each verdict is valid on its face. The question is whether, when taken together, the verdicts require a new trial. We conclude that they do not.

The indictment charged three separate crimes. It was the jury's duty to consider each separately and to render a verdict on each. The trial court instructed the jury as to the elements of each crime and the number of votes required to convict or acquit on each. The court also instructed the jury that the state was required to prove each of the material elements of felony murder beyond a reasonable doubt, including that defendant, either alone or with one or more persons, committed the crime of kidnapping in the first or second degree and that in the course of and in furtherance of the

---

making statements about what was going on and striking him, hitting him with the gun as well as his fist, the beating that took place in the basement.

"The reasons Mr. Mendez has to make that argument is because, again, using the rule about felony murder, and using the evidence placed at the scene, if you find that Mr. Mendez participated in abducting, keeping captive, and then transporting Carlos Sevilla out to this location, you know that he died there, you know the other evidence is found there; therefore, you must find Mr. Mendez guilty of felony murder as well, because the evidence is overwhelming that Carlos Sevilla died during the commission of the kidnapping.

"So, Mr. Mendez has to argue to you that he is not guilty of anything, because he knows if you find he is guilty of kidnapping, he is also going to get found guilty of felony murder."

Defendant did not object to the prosecutor's argument.

[5] Defendant excepted to the trial court's instruction that a less than unanimous guilty verdict could be returned on the kidnapping count. After deliberating for several hours, the jury asked to be reinstructed. The trial court did so, stating in part:

"In Count II, the offense charged is Felony Murder. A person commits the crime of Felony Murder if that person, acting either alone or with one or more persons, commits the crime of Kidnapping in the First Degree or Second Degree, and in the course and furtherance of the crime the person is committing, the person or another participant causes the death of a person.

"* * * * *

"I will remind you, Ladies and Gentlemen, regarding the verdicts that you reach, the number necessary to reach a verdict as to Murder and Felony Murder, in order to find the Defendants guilty of one or the other on both of those charges, all 12 of your number must agree. That is, on the Murder or Felony Murder charge, in order to find the Defendant or any one of them guilty, all 12 of you must agree on the verdict.

"* * * * *

"As to the charge of Kidnapping in the First Degree or the lesser included offense of Kidnapping in the Second Degree, at least 10 of your 12 in number must agree on a guilty or a not guilty verdict. Ten of your 12 in number must agree on a guilty or not guilty verdict on the Kidnapping in the First Degree or Kidnapping in the Second Degree verdict."

crime of kidnapping in the first or second degree which defendant was committing, defendant or another participant caused Sevilla's death.

The verdicts in this case are subject to more than one interpretation. Defendant suggests that the dissenting juror on the 11-1 first degree kidnapping vote may have found that defendant was not guilty of either first or second degree kidnapping, a finding inconsistent with the dissenter's felony murder vote. Another interpretation, harmonious with the felony murder verdict, is that the dissenting juror believed defendant not guilty of first degree kidnapping but guilty of the lesser included crime of second degree kidnapping, a felony sufficient to sustain a felony murder verdict. The 11 jurors who voted guilty of first degree kidnapping of necessity had to find defendant guilty of all the elements of second degree kidnapping. *See supra,* note 3. The dissenting juror may have disagreed with the other 11 solely on the element that distinguishes first and second degree kidnapping. In denying defendant's motion for a new trial, the trial court recognized that this interpretation would harmonize the verdicts.[6] Since they can be harmonized, the verdicts are not necessarily inconsistent.[7]

■ ■ Defendant argues that a mere numerical poll was inadequate and, therefore, the trial court should have talked to the jurors *in camera* to determine whether they understood the court's instructions. He relies on ORCP 59G, ORS 136.330, 136.480 and 136.485. Defendant did not ask the trial

---

[6] The trial court explained:

"It is possible, for instance, that a juror may have concluded that the Defendant was not guilty—Defendant Mendez was not guilty of the charge of Kidnapping in the First Degree, and consequently voted no or not guilty on the charge, but may have been guilty of the crime of Kidnapping in the Second Degree, which was one of the allegations in the Felony Murder charge, and it would explain a verdict like this."

[7] The question of inconsistent verdicts is one of first impression for this court; however, the Court of Appeals has considered the question several times. *See State v. Watkins,* 67 Or App 657, 679 P2d 882, *rev den* 297 Or 272 (1984); *State v. Peaslee,* 59 Or App 519, 651 P2d 182, *rev den* 294 Or 212 (1982), 294 Or 569 (1983); *State v. Owens,* 58 Or App 739, 650 P2d 124 (1982); *State v. Pugh,* 55 Or App 305, 637 P2d 1325 (1981); *State v. Grabill,* 34 Or App 639, 579 P2d 316, *rev den* 284 Or 521 (1978). The Court of Appeals has followed the apparent majority rule against overturning criminal convictions on that ground. *See State v. Grabill, supra,* 34 Or App at 643. Our holding that the verdicts in this case are not necessarily inconsistent renders inappropriate any consideration of this court's authority to overturn criminal convictions on the ground of inconsistent verdicts.

court to direct the jury to reconsider its verdicts under ORS 136.480 or 136.485. Further, the trial court complied with ORCP 59G and ORS 136.330 by numerically polling the jury. Polling is a procedure designed to test the numerical validity of a verdict at the time it is rendered. *Sandford v. Chev. Div. of Gen. Motors,* 292 Or 590, 614, 642 P2d 624 (1982). Defendant cites no authority, and we are aware of none, authorizing a trial court to question jurors concerning their thought processes, their understanding of the law, or the reasons for their verdicts. Inquiry is limited to whether each juror agrees with the verdict. The trial court did not err in refusing to talk to the jury *in camera* for the purposes suggested by defendant.

## II.

Defendant next contends that the trial court erred in excluding certain hearsay evidence. During cross-examination of prosecution witness Baldon, defendant made an offer of proof that Baldon would testify that two weeks before his murder Sevilla asked her for a weapon, stating that he feared Moen would kill him for his drugs, money, and girlfriend. Defendant argued that the evidence was admissible under OEC 803(3)[8] or OEC 804(3)(b),[9] or as circumstantial evidence that defendants were not the only persons with a motive to kill Sevilla. The prosecutor objected on the ground that the evidence was hearsay not subject to any exception. The trial court sustained the objection and excluded the evidence.

Sevilla's statement to Baldon was hearsay.[10] Hearsay

---

[8] OEC 803 provides in part:

"The following are not excluded by [OEC 802] even though the declarant is available as a witness:

"* * * * *

"(3) A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will."

[9] OEC 804 provides in part:

"(3) The following are not excluded by [OEC 802] if the declarant is unavailable as a witness:

"* * * * *

"(b) A statement made by a declarant while believing that death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death."

[10] OEC 801 provides in part:

"As used in ORS 40.450 to 40.475 [rules 801 to 806], unless the context

is inadmissible except as provided in OEC 801-806 or as otherwise provided by law. OEC 802. Defendant argues that Baldon's testimony is admissible under OEC 803(3) as evidence of Sevilla's state of mind or emotions.[11] The trial court found that *Sevilla's* state of mind or emotions was too remote to be relevant to any fact in issue at the trial.[12] We agree.

---

requires otherwise:

    "(1) A 'statement' is:

    "(a) An oral or written assertion; or

    "(b) Nonverbal conduct of a person, if intended as an assertion.

    "(2) A 'declarant' is a person who makes a statement.

    "(3) 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[11] The following colloquy occurred:

    "[COUNSEL]: That is the extent of my offer of proof, Your Honor.

    "THE COURT: All right. My concern is, how do we get around the hearsay rule, and what exception are you relying upon? Some of the statements of the victim as it relates to the crime, itself, of course, are admissible. But, the incident, itself, for instance on June 28th—well, that is part of the incident, but two weeks prior, you give me your argument on that on how we get around the hearsay.

    "[COUNSEL]: Two exceptions, Your Honor. OEC Rule 803(3) is the first one. That is then existing mental, emotional and/or physical condition.

    "THE COURT: Just a second. Which is relevant for what purpose?

    "[COUNSEL]: To show state of mind of the person who wound up being deceased. We would not offer it to be that that is in fact what happened, that is to say, that he, in fact, was killed by that named person, but to show that he then had cause to fear for his life at the hands of another.

    "THE COURT: But, you still have not answered my question. What is the relevance of his state of mind in that regard?

    "[COUNSEL]: Because, again, it shows that he was in fear at the hands of another, not any of these three [defendants].

    "THE COURT: So, you are offering it for the truth of what he is saying.

    "[COUNSEL]: No.

    "THE COURT: Well, then, what relevance does it have? You see, you can get the exceptions fine, but you still have to pass the relevancy rule. What is it relevant to? If it is not offered for the truth of what is being said, it doesn't have relevance. It obviously has relevance if offered for the truth of what is being said by the witness.

    "[COUNSEL]: It tends to undercut the strong motive testimony that has been put on by the State throughout this trial. The fact that he said, 'I am in fear for my life at the hands of Carl Moen and not Roberto Contreras,' indicates that the motive testimony that has been put on is not that strong. I think that does help the jury, it is relevant to their understanding of the motive that the State has been trying to put on here."

[12] The trial court stated:

    "THE COURT: * * * Your offering of this statement, even if the Court

■    Defendant argues in the alternative that Baldon's testimony is admissible under OEC 804(3)(b) as a statement Sevilla made in belief of his impending death *i.e.,* a "dying declaration." The trial court found that the statement was not a dying declaration.[13] Again, we agree. Sevilla did not speak "while believing that [his] death was imminent." He may have feared his death was imminent, but in attempting to obtain a weapon, he showed that he intended to defend himself and to live. OEC 804(3)(b)'s plain language establishes its inapplicability here.

■    Defendant argues that Baldon's testimony is "circumstantial evidence relating to the issue of motive, [*i.e.,*] that somebody else could have had an equal motive [to kill Sevilla]. It undercuts the State's theory that [defendants] killed [Sevilla]." The trial court conceded that if offered to prove the truth of the matter asserted, *i.e.,* that Moen wanted to kill

---

conceded the point that it is relevant to establish his state of mind, the jump from the fact that he thought Carl Moen was going to kill him to the point that that means he didn't believe [defendant] was going to kill him is simply his state of mind. That, of course, is what you are arguing, that his state of mind was that he didn't believe that [defendant] was going to be involved in killing him.

"That is really remote, because he makes a statement regarding one other person. But, the fact still remains that even if it had relevancy, the prejudicial effect of such a statement outweighs its probative value, because the prejudicial effect is that the jury could accept that as a statement for the truth of what is being said by the declarant about some future thing that is going to happen, and it is not admissible for that purpose. [*See* OEC 403.]

"To let it in for the purpose you suggest is so remote that it is not admissible.

"It is clear as [the prosecutor] notes and as [Professor] Kirkpatrick notes in his text, discussion of Rule 803(3) what you are relying on is that the exception doesn't authorize the admission to prove the fact remembered or believed, except in a limited circumstance, and that deals with wills.

"The commentary in [Kirkpatrick's] text states that, 'Declarations of intention casting light upon the future have been sharply distinguished between declarations of memory pointing backwards to the past.' There would be an end or nearly that to the rule against hearsay if the distinction were ignored."

[13] The trial court stated:

"As to Rule 804(3)(b), this is simply a restatement of the dying declaration rule that Oregon has always had, and the only change from the prior Oregon law before the Oregon Evidence Code was that under the Oregon Evidence Code it is not required that the declarant in fact be dead, which is of no significance on the point in this case. Otherwise, the rule was the same as it has always been, and the discussion makes clear that there must be as one case defined it, a settled hopeless expectation of death—that death is near at hand. What is said must have been spoken in the hush of its impending presence. The person must have spoken with a consciousness of a swift and certain doom."

Sevilla, Baldon's testimony may have been relevant.[14] However, even if relevant, the hearsay was inadmissible unless it came within some OEC exception or other basis for admissibility, and the court found none. Neither do we.

Defendant argues that Baldon's testimony should have been admitted because it has reliability equivalent to that of evidence falling within other hearsay exceptions. He notes that Sevilla's statement was specific as to the person he feared and as to the reason he feared Moen wanted to kill him. Specificity alone, however, does not establish truthfulness. Sevilla's statement was uncorroborated and it was accompanied by no other indicia of reliability. The hearsay has no equivalent circumstantial guarantees of trustworthiness as do other recognized hearsay exceptions. Thus, it provides no basis for giving it any greater reliability than hearsay in general.

Defendant points to Baldon's status as a key prosecution witness as weighing in favor of the reliability of her testimony. In making that argument, defendant misunderstands the hearsay rule. As we stated in *Sheedy v. Stall,* 255 Or 594, 596-97, 468 P2d 529 (1970):

> "It is not the untrustworthiness of the testimony of the witness on the stand who is asked to testify to what the declarant said that causes the exclusion of hearsay testimony. The credibility of the witness can be tested by cross-examination. The problem of the trustworthiness of the witness in the courtroom is the same whether the witness is testifying to another's conduct or to another's words. It is the untrustworthiness of the declarant's statement that causes hearsay testimony to be excluded."

---

[14] The trial court stated:

"THE COURT: Oregon Evidence Code controls. I don't know what you are saying there that fits the Code, other than you may be creating a new rule of law where you think it is admissible.

"[COUNSEL]: No. It is circumstantial evidence.

"THE COURT: Circumstantial evidence still has to be proven according to the Rules of Evidence. Just because it is circumstantial, doesn't mean you don't have to prove relevancy. You don't have to prove it is not hearsay, et cetera. You still have to fit the other rules.

"Circumstantial evidence is always admissible as long as it complies with the Rules of Evidence."

While the jury could assess Baldon's credibility, it could not assess Sevilla's.

■        Finally, defendant argues that his constitutional right to confront and cross-examine his accusers and, thus, his right to a fair trial was abridged by exclusion of Baldon's testimony. He relies on Article I, sections 10 and 11, of the Oregon Constitution, the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and *Chambers v. Mississippi,* 410 US 284, 298-302, 93 S Ct 1038, 35 L Ed 2d 297 (1973). Defendant made *no* constitutional argument in the trial court. As previously indicated, the Court of Appeals affirmed without opinion. We decline to consider defendant's state constitutional claim because he has failed to brief or argue any independent state constitutional theory. The only Oregon authority he cites is *Jorgensen/Brom v. Cupp,* 31 Or App 157, 570 P2d 86, (1977), *rev den* 281 Or 323, (1978), *cert den* 439 US 844 (1978), a case decided solely on Sixth Amendment grounds. Accordingly, this opinion decides nothing under the Oregon Constitution. We proceed to consider defendant's federal constitutional claim.

■        In *Chambers,* the defendant called one McDonald as a witness to introduce McDonald's written confession of the murder for which the defendant was then being tried. McDonald repudiated his confession and asserted an alibi. The trial court denied defendant's request to cross-examine McDonald as an adverse witness concerning the circumstances of his repudiation of his confession, his alibi, and with regard to other oral confessions allegedly made by McDonald on the ground that a party could not impeach his own witness. The court also excluded as inadmissible hearsay the testimony of three other witnesses as to oral confessions McDonald allegedly made to each of them shortly after the murder. In reversing Chambers' conviction, the United States Supreme Court explained:

> "The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to

cross-exmaination; and he is not available in order that his demeanor and credibility may be assessed by the jury. A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination. * * * Few rights are more fundamental than that of an accused to present witnesses in his own defense. *In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. * * *"* 410 US at 298-302 (Emphasis added; citations and footnotes omitted).

The hearsay statements involved in *Chambers* were originally made under circumstances that provided considerable assurances of their reliability.[15] Moreover, the circumstances under which the evidence was introduced provided the jury with an opportunity to assess the declarant's credibility in repudiating his prior statement. The declarant, McDonald, was available to testify under oath, to be cross-examined, and to have his answers and demeanor weighed by the jury. The testimony rejected by the trial court bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony was directly inconsistent with Chambers' guilt.

*Chambers* does not require, as defendant appears to suggest, admission of all exculpatory evidence, however remote or lacking in reliability.[16] The reliability of the hearsay evidence in this case falls far short of that in *Chambers*. It bore no indicia of reliability. It was not corroborated in any way, nor did defendant offer any corroborating evidence. Unlike *Chambers,* the declarant was not available to testify under oath. Finally, the evidence offered herein was of far less

---

[15] Three defense witnesses were prepared to testify under oath at the trial that on three separate occasions shortly after the crime the hearsay declarant had named himself as the murderer of the person Chambers was accused of killing. Each of the confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Each confession was corroborated by the others and by other evidence in the case. Each confession was a statement against the declarant's interest.

[16] A trial court's exclusion of evidence that defendant offers does not necessarily create constitutional error. *See State v. Mai,* 294 Or 269, 273-77, 656 P2d 315 (1982); *State v. Holterman,* 69 Or App 509, 516, 687 P2d 1097, *rev den* 298 Or 172 (1984).

importance than that involved in *Chambers*. Even if believed, the evidence showed only that Sevilla feared Moen. It did not negate defendant's guilt. Unlike the defendant in *Chambers*, defendant here did not offer to call any other witness at trial to corroborate either that Sevilla had made the statement or that the statement itself was truthful or reliable. We conclude that Sevilla's statements were not made under circumstances that provided any assurances of their reliability. Nor was there any means by which the jury could assess Sevilla's credibility in making the statements. Because the hearsay was not admissible under any OEC or other exception, the trial court properly excluded it. We find no error.

The decisions of the Court of Appeals and the trial court are affirmed.