Argued and submitted June 15, the decision of the Court of Appeals and judgment of the circuit court reversed and remanded to circuit court for further proceedings September 26, 1989

STATE OF OREGON,
*Respondent on Review,*

*v.*

CHRISTOPHER BLAINE BOOTS,
*Petitioner on Review.*

(CC 10-86-07965; CA A44019; SC S36000)

780 P2d 725

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the petition was Gary D. Babcock, Public Defender, Salem.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review.

LINDE, J.

## LINDE, J.

Defendant appealed his conviction of aggravated murder, asserting four assignments of error in the Court of Appeals. That court affirmed the conviction. *State v. Boots*, 94 Or App 713, 767 P2d 450 (1989). We allowed review limited to the propriety of the trial court's instruction that the jury need not agree on the factual circumstance that made the homicide aggravated murder as distinct from simple murder.[1] We hold that this instruction should not have been given.

An intentional homicide, or a homicide committed in connection with one of nine felonies listed in ORS 163.115(1), constitutes the crime of murder under that section. It is not disputed that the jury agreed that defendant committed murder. Murder carries a sentence of life imprisonment with a minimum of at least ten years without parole and potentially a longer minimum term. ORS 163.115(3).

"Aggravated murder" is a murder that includes one or more of a variety of additional facts. ORS 163.095. That section requires proof beyond a reasonable doubt of at least one of 17 different facts, two of which were charged here.[2]

---

[1] We also submitted questions to the parties concerning the appealability of the "Sentence Order" in this case. We have determined that the order was appealable under the then applicable statutes.

[2] ORS 163.095 specifies these aggravating circumstances:

"(1)(a) The defendant committed the murder pursuant to an agreement that the defendant receive money or other thing of value for committing the murder.

"(b) The defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder.

"(c) The defendant committed murder after having been convicted previously in any jurisdiction of any homicide, the elements of which constitute the crime of murder as defined in ORS 163.115 or manslaughter in the first degree as defined in ORS 163.118.

"(d) There was more than one murder victim in the same criminal episode as defined in ORS 131.505.

"(e) The homicide occurred in the course of or as a result of intentional maiming or torture of the victim.

"(2)(a) The victim was one of the following and the murder was related to the performance of the victim's official duties in the justice system:

"(A) A police officer as defined in ORS 181.610(6);

"(B) A correctional, parole or probation officer or other person charged

Aggravated murder is a capital offense. ORS 163.105. We must therefore decide this case in light of the command not only of ORS 136.450 but also of Article I, section 11, of the Oregon Constitution that capital ("first degree") murder requires a unanimous verdict.

The indictment charged two theories of aggravated murder. One theory was that the homicide was committed "in the course of and in furtherance of committing Robbery in the First Degree," which is one of the felonies listed in ORS 163.115 that are incorporated in ORS 163.095(2)(d) when the defendant personally and intentionally committed the homicide. The second theory was that defendant committed the homicide in order to conceal the identity of the perpetrators of the robbery, ORS 163.095(2)(e).[3] The trial court instructed the jury:

"With regard to this charge, it is not necessary for all jurors to agree on the manner in which Aggravated Murder

---

with the duty of custody, control or supervision of convicted persons;

"(C) A member of the Oregon State Police;

"(D) A judicial officer as defined in ORS 1.210;

"(E) A juror or witness in a criminal proceeding;

"(F) An employe or officer of a court of justice; or

"(G) A member of the State Board of Parole.

"(b) The defendant was confined in a state, county or municipal penal or correctional facility or was otherwise in custody when the murder occurred.

"(c) The defendant committed murder by means of an explosive as defined in ORS 164.055(2)(a).

"(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in 163.115(1)(b).

"(e) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime.

"(f) The murder was committed after the defendant had escaped from a state, county or municipal penal or correctional facility and before the defendant had been returned to the custody of the facility."

[3] The indictment charged that defendant both killed the victim in the course of the robbery *and* did so in order to conceal the perpetrator's identity. The governing statute prescribes that when a crime may be committed by the use of different means, the indictment may charge the means in the alternative. ORS 132.560. In view of the statute, a reader reasonably may infer that when an indictment uses "and" instead of "or," it charges that both means were used and that both need to be proved. The continued use of "and" where "or" is called for testifies to the power of habit, custom, and faith in existing forms over the force of mere statutes. *See State v. White*, 48 Or 416, 87 P 137 (1906); *State v. Carr*, 6 Or 133 (1876).

was committed. That is, some jurors may find that it was committed during the course of and in furtherance of Robbery in the First Degree, and others may find it was committed to conceal a crime or its perpetrator. Any combination of twelve jurors agreeing that one or the other or both occurs is sufficient to establish this offense."

The propriety of the instruction must, of course, be judged for all potential cases charging multiple alternative theories under ORS 163.095. It does not depend on the evidence in the particular case, assuming that there is sufficient evidence to submit each factual allegation to the jury, as there was here.

The factual finding required for conviction under subsection (2)(d) of ORS 163.095 differs from the finding required under subsection (2)(e). A defendant may have killed a person in order to conceal the commission of a robbery or of the identity of the robber, whether or not the defendant participated in the robbery. Or the defendant may have personally killed the victim in the course of a first degree robbery without having any thought of concealing the identity of the robber, which may be known to numerous witnesses. The challenged instruction explicitly tells jurors to return a verdict of aggravated murder even if some of them doubt that the defendant was a participant in the robbery but believe that he meant to conceal it and others believe that defendant was a robber but not that concealing the crime played a role in the killing.

The implications go further. In another case, there could be several charges under different subsections of ORS 163.095 in addition to a robbery and an intent to conceal, for instance, that the defendant was paid to commit the murder, that the victim was a police officer, and that the death resulted from defendant's intent to maim the victim. The instruction would tell jurors to return a verdict of aggravated murder, although some do not believe that the officer was present in an official capacity and others do not believe that defendant was paid, or intended to maim, or that there was a robbery or an intent to conceal it. In short, the instruction relieves the jury from seriously confronting the question whether they agree that any factual requirement of aggravated murder has been proved beyond a reasonable doubt, so long as each juror is willing to pick one theory or another.

The Court of Appeals nevertheless approved the instruction, relying on its prior decisions in *State v. Hazelett,* 8 Or App 44, 492 P2d 501 (1972), and *State v. Bruno,* 42 Or App 539, 600 P2d 948 (1979), which involved alternate theories of premeditated and felony murder. The court quoted the following passage from *Hazelett:*

" '* * * Here, there was only one act charged and proved — the act of taking the life of the victim. Whether this was done with premeditation or while attempting rape related to the defendant's mental state, and did not relate in any way to the act charged. Since the legal effect of committing the act is the same whether done with premeditation or while attempting rape, there is no reason to require the jury to unanimously agree on which of the two possible mental states, both equally culpable, defendant possessed at the time of the murder charged.' 8 Or App at 47."

*State v. Boots, supra,* 94 Or App at 718. The *Hazelett* court stated that this court had decided the issue against defendant in *State v. Reyes,* 209 Or 595, 303 P2d 519 (1957). 8 Or App at 48.

That was erroneous, as the Court of Appeals in the present case recognized. The point decided in *Reyes* was that under the indictment in that case the prosecutor did not have to elect between premeditated and felony murder, and if there was evidence of either theory, the state was entitled to have the jury instructed on both theories. 209 Or at 621. *Reyes* did not hold that the jury need not be unanimous, that it sufficed if half of them believed that there was a felony but no premeditation and the other half believed that there was premeditation but no felony. The Court of Appeals therefore correctly noted that this court has yet to decide the question. 94 Or App at 718 n 6. In fact we allowed review in *State v. Bruno, supra,* but that decision ultimately was affirmed by an evenly divided court. *State v. Bruno,* 290 Or 159, 619 P2d 648 (1980).

Apart from lacking support, on its merits the quoted passage from *Hazelett* is insupportable. There is no basis for distinguishing between jury agreement on the act required for criminal liability and on the mental element that makes the act culpable. The act and the culpable mental state are equally essential for any crime that requires a culpable mental state.

ORS 161.095.[4] Of course jurors cannot convict a defendant if they unanimously agree that he intended to kill a person but only half believe that he did so. No more can they convict if they unanimously agree that a defendant's act caused a person's death but only half believe that he acted intentionally. The same is true if jurors agree that a defendant's act caused a person's death but do not agree that the defendant committed a felony, or vice versa.

The need for unanimity is obvious when a charge under ORS 163.095(2)(d) of intentional killing in furtherance of first degree robbery stands alone. It is obvious when a charge under ORS 163.095(2)(e) of killing in order to conceal the crime or the perpetrator stands alone. It should be no less obvious when the state charges a defendant both under ORS 163.095(2)(d) and under ORS 163.095(2)(e). In order to convict, the jury must unanimously agree on the facts required by either subsection. Indeed, they may agree on both, if both are proved beyond a reasonable doubt.

The challenged instruction therefore is wrong in principle. The state, however, cites a number of decisions around the country to the contrary. We have examined the cited decisions. Some of these support the state's position in broad terms, although the statutes differ.[5] Many of them involve issues different from the present case and are not in point.[6] Some are decisions of intermediate courts which, of

---

[4] ORS 161.095 provides:

"(1) The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing.

"(2) Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

[5] *State v. Gillies*, 135 Ariz 500, 662 P2d 1007 (1983) (felony murder and premeditation presented to the jury as alternative theories of first degree murder); *People v. Nye*, 63 Cal 2d 166, 403 P2d 736 (1965), *cert den* 384 US 1026 (1966) (felony murder rape, felony murder robbery, or premeditated murder as alternative theories of first degree murder); *Gavin v. State*, 425 NW2d 673 (Iowa 1988) (premeditation and felony murder as alternative ways to establish the mental state necessary for first degree murder); *State v. Wilson*, 220 Kan 341, 552 P2d 931, 935-36 (1976) (same); *State v. Tillman*, 750 P2d 546 (Utah 1987) (jury did not have to be unanimous about whether the aggravating circumstance in a first degree murder was burglary or arson).

[6] *See, e.g., Burrell v. United States*, 455 A2d 1373 (DC 1983) (possibility of a compromise verdict where Burrell was charged with murder and convicted of the lesser included offense of manslaughter); *People v. Viduya*, 703 P2d 1281 (Colo 1985) (where

course, may control the practice in those states but may prove to be erroneous when the state's highest court addresses the issue.[7] The weakness of such citations appears from the fact that the *Hazelett* opinion of our own Court of Appeals, which we find to have been wrong, was cited as authority in opinions from other states that now are cited to us. *See, e.g., State v. Wilson,* 220 Kan 341, 552 P2d 931, 936 (1976); *James v. State,* 637 P2d 862, 866 (Ok Crim App 1981). The result may be summarized as showing that the problem has proved difficult and that this court must itself analyze it under the applicable statutes and constitutional guarantees.

The state particularly relies on *Holland v. State,* 91 Wis 2d 134, 280 NW2d 288 (1979), *cert den* 445 US 931 (1980). The state quotes a passage to the effect that a rule requiring unanimous jury agreement on "the manner in which the defendant participated in the crime" would "permit the guilty defendant to escape accountability under the law because

---

a statute states that either reckless driving or driving while intoxicated can be used to prove vehicular homicide, whether the jury must be instructed to find *both* conditions); *State v. Edwards,* 163 Conn 527, 316 A2d 837 (1972) (whether the wording of the indictment required the state to prove *both* premeditation and felony murder).

Several citations are not homicide cases. *See State v. James,* 698 P2d 1161 (Alaska 1985) (first degree assault); *Wells v. Commonwealth,* 561 SW2d 85 (Ky 1978) (same); *Rice v. State,* 311 Md 116, 532 A2d 1357 (1987) (theft).

In some of the cited cases, the court decided that the jury actually was unanimous upon one theory because all of the facts of that theory were subsumed within the alternative theory as well. *State v. Jones,* 193 Conn 70, 475 A2d 1087 (1984) (in alternative of robbery and attempted robbery, jury was unanimous that defendant at least attempted robbery); *Tyler v. United States,* 495 A2d 1180 (DC 1985) (second degree burglary; all jurors must have thought defendant was guilty of aiding and abetting, although some may have also thought he was the principal).

In other cases, the court decided that the alternative factual details had no separate legal importance. *State v. Flathers,* 57 SD 320, 232 NW 51 (1930) (jury unanimity about whether the defendant intended to kill his victim or her companion was unnecessary where the culpability element could be shown by an intent to kill anyone); *Gray v. United States,* 544 A2d 1255 (DC 1988) (jury unanimity about physical specifics of a sexual attack was unnecessary where the court decided that all the events described by the prosecution constituted one rape); *State v. Souhrada,* 122 Mont 377, 204 P2d 792 (1949) (in a conviction for vehicular manslaughter, the jury did not need to agree on what negligent or reckless act caused the death); *State v. Giwosky,* 109 Wis 2d 446, 326 NW2d 232 (1982) (injury by multiple blows occurring within a short continuous incident).

[7] *E.g., State v. Anderson,* 16 Conn App 346, 547 A2d 1368, *app den* 209 Conn 828 (1988); *People v. Travis,* 170 Ill App 3d 873, 525 NE2d 1137 (1988), *cert den* 109 S Ct 1149 (1989); *People v. Ewing,* 102 Mich App 81, 300 NW2d 742 (1981), *lv den* (1982); *State v. Begbie,* 415 NW2d 103 (Minn Ct App 1987), *rev den* (1988); *State v. Brigham,* 709 SW2d 917 (Mo Ct App 1986).

jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant." 280 NW2d at 293. The quotation is not persuasive. It seems questionable to characterize a person as "the guilty defendant" who will "escape accountability" when the issue for the jury is whether every element of the person's guilt has been proved. And "accountability under the law" is provided when a person is prosecuted; if a jury does not convict, one would not refer to a "guilty defendant" who "escape[s] accountability." Nor is the question whether a jury could "choose" between different ways in which a defendant participated in the crime. It is not a matter of "choosing" but of factfinding. If more than one way is charged and proved to the jury's unanimous satisfaction, the jury need not "choose" and there is no difficulty. The problem arises precisely when none of the alternative ways has been proved to the satisfaction of all jurors, when one or more jurors is in doubt about each of the alternatives charged. We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (or the indictment) has made essential to a crime.

Moreover, the Wisconsin court's holding in *Holland v. State, supra,* stops well short of the state's position in the present case. Holland was charged with murder as a party to a sex crime that had fatal consequences, and the issue concerned instructions under a statute that defines a party to a crime as one who directly commits the crime, intentionally aids and abets its commission, or conspires, advises, hires, counsels or procures its commission. 280 NW2d at 290 n 2. In other words, the statute makes one a principal if one personally commits the crime and also if one participates in a less direct role. That is closer to the situation we faced in *State v. Mendez,* 308 Or 9, 774 P2d 1082 (1989), than to this case. There a defendant was charged with felony murder based on an underlying felony which was charged as kidnapping in the first degree. The jury voted unanimously to convict the defendant of felony murder, but only 11-1 to convict him of kidnapping in the first degree, and the defendant appealed on grounds that the votes were inconsistent. We held that they were not inconsistent, because the juror who dissented from

the guilty verdict on the first degree kidnapping charge might have been convinced that the defendant had committed the lesser included offense of kidnapping in the second degree, an offense that also would suffice for that juror's vote to convict the defendant of felony murder. 308 Or at 14. Regardless how we would decide the actual issue in *Holland* — conviction as a principal either by direct action or by less direct participation — no similar inclusion of lesser degrees of participation in statutory responsibility as a principal is involved in ORS 163.095(2)(d) and ORS 163.095(2)(e). *Holland* leaves open how the Wisconsin court would decide the present issue if it came before that court.[8]

A decision which *Holland* described as the leading federal case on the broader question is *United States v. Gipson,* 553 F2d 453 (5th Cir 1977). Gipson was charged not with a homicide but as a person who "receives, conceals, stores, barters, sells or disposes of" a stolen vehicle in interstate commerce. *Id.* at 455 n 1. The trial judge told the jurors that they need not agree which of these acts Gipson had done. *Id.* at 455-56. In the opinion remanding the case for a new trial, Judge Wisdom wrote:

> "Like the 'reasonable doubt' standard, which was found to be an indispensable element in all criminal trials in *In re Winship,* 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.' 397 U.S. at 364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375. The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required." (Footnotes omitted.)

---

[8] The same applies to the Washington Supreme Court's similar holding on this point in *State v. Carothers,* 84 Wash 2d 256, 525 P2d 731 (1974). On the issue of unanimity on the substantive offense, *Carothers* acknowledged that this might be required but found that the jury necessarily had been unanimous in finding felony murder. 525 P2d at 737.

*United States v. Gipson, supra,* 553 F2d at 457-58.[9] The *Gipson* opinion comes closer to the present case than do cases like *Holland* under statutes defining who besides the primary actor is a principal. Nothing in ORS 163.095 or in ORS 136.450 requires or supports an instruction that, as *Gipson* notes, creates serious constitutional doubts.

What led the *Hazelett* court astray was the simple error of counting and adding those jurors who are convinced of any one distinct statutory element rather than focusing, for each element, on the jurors who may not be convinced of that element, though they separately might convict on their own, equally nonunanimous, view of the decisive facts. Under the proper focus — the possible dissent of some jurors from any one factual finding — the principle of decision is evident. The instruction that the jury need not unanimously agree either on the charge under ORS 163.095(2)(d) or on the charge under ORS 163.095(2)(e) was error. On remand, the state may choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder.

The decision of the Court of Appeals is reversed. The circuit court's judgment of conviction of aggravated murder is reversed and the case is remanded to the circuit court for further proceedings.

---

[9] The *Gipson* court perceived a possible problem when a statute uses synonyms to describe conduct that often would fit within several of closely similar terms, for instance "bartering, selling and disposing." *United States v. Gipson,* 553 F2d 453, 458 (5th Cir 1977). *Gipson* contrasted such terms with a hypothetical prosecution for a crime (say, "dangerous driving") that a statute defines as encompassing "(a) speeding, (b) driving without lights at night, (c) making a turn from the wrong lane, and (d) failing to use turn signals." *Id.* at 458 n 8. If an instruction told a jury to convict a defendant if each juror believed that one, though not the same one, of these events occurred, "the defendant's right to a unanimous verdict would be violated if the jury found him guilty of violating the code section." *Id.* The 17 different facts that make a murder into aggravated murder under ORS 163.095 are in no way synonymous.