Argued and submitted May 23, affirmed December 14, 2005

# STATE OF OREGON,
## *Respondent,*

*v.*

# DANIEL WARD WILLIAMS,
## *Appellant.*

## 02030586; A120348

125 P3d 93

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the opening brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services. On the supplemental brief was Joshua B. Crowther.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Ceniceros, S. J.

## LANDAU, P. J.

After a bench trial, defendant was convicted of one count each of sexual abuse in the first degree, ORS 163.427; rape in the second degree, ORS 163.365; and rape in the third degree, ORS 163.355, based on his conduct involving his minor stepdaughter. The trial court sentenced him to consecutive 75-month sentences on the first two convictions and a consecutive 14-month sentence on the third. On appeal, defendant advances three assignments of error: (1) a delay of approximately 51 months between the victim's report of the crimes to a law enforcement officer and the issuance of the indictment in the case violated his rights to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) the trial court erred in admitting a three-page typewritten statement by the victim regarding defendant's conduct toward her; and (3) the imposition of consecutive sentences violated his jury trial rights as established in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). We affirm, writing only to address defendant's first assignment of error.

The relevant facts are not in dispute. Defendant lived in a house in Linn County with the victim's mother and the victim. Between August 1995 and February 1997, defendant engaged in sexual conduct with the victim. In December 1997, while the victim was being interviewed by a police officer about another matter, she disclosed information regarding defendant's conduct.

By that time, defendant was no longer living with the victim's mother and the victim. The police initially were unable to ascertain defendant's whereabouts or his physical address. However, according to the testimony of the investigating officer, as of early 1998, the police knew defendant's post office box address in North Dakota.

In April 1998, the district attorney's office sent an "issuing notice" to the investigating officer stating that no charges were being brought in the case "since there's nothing corroborating [the victim's] account."

In March 2001, the state learned that defendant was under arrest in North Dakota for a sex offense involving an

18-year-old girl. In August 2001, the prosecutor began communicating with the victim's father for the purpose of arranging for the victim to testify before a grand jury. On October 15, 2001, the prosecutor sent the victim's father an e-mail message stating that prosecution of defendant for his Oregon crimes was "stalled" because defendant had not yet been convicted for his North Dakota crime. Ten days later, the prosecutor sent the victim's father another e-mail message, informing him that defendant had been convicted in the North Dakota case and that the conviction "does increase the chances that I can eventually persuade a Linn County jury to convict [defendant] of doing sexual things to [the victim]," and suggesting arrangements for the victim's testimony before the grand jury.

On March 7, 2002, a grand jury indicted defendant on the current charges. Defendant moved to dismiss the indictment, arguing that the 51-month delay between December 10, 1997, when the victim first reported the alleged conduct and the state declined to pursue the matter, and March 7, 2002, when the grand jury returned its indictment, violated his right under the Due Process Clause to a fair trial. According to defendant, the state purposely delayed the indictment in order to obtain a tactical advantage, namely, the ability to impeach his testimony with the North Dakota conviction. He also argued that the delay prejudiced his ability to prepare his defense. The state responded that there was "little" evidence that it had deliberately delayed to gain a tactical advantage and that, in any event, there was no evidence of prejudice.

At the pretrial hearing on his motion, defendant testified that, while he was living in North Dakota, he had received unemployment checks from the State of Oregon at his post office box address and that he filed tax returns in North Dakota. He also testified that the victim and his ex-wife (the victim's mother) had been in contact with him there. Defendant testified that, before being convicted in North Dakota, he had never been convicted of a crime. Defendant offered no evidence as to what testimony he or other witnesses would give at trial or might have given at an earlier time if able or available to testify.

The trial court denied the motion to dismiss. The court found that defendant had presented no evidence pertaining to any witnesses or information the availability of which was affected by the delay and concluded that, accordingly, there was no evidence that defendant had "suffered any concrete and substantial prejudice to his ability to present a defense." The trial court also found that defendant's new conviction was primarily the result of his own conduct in committing a new crime and the state had not "delayed taking action for the deliberate purpose of obtaining an improper tactical advantage."

On appeal, defendant argues that the trial court erred in denying his motion to dismiss based on preindictment delay, reiterating that the state intentionally delayed to gain a tactical advantage and that he was substantially prejudiced by the delay. As to prejudice, defendant argues that his North Dakota conviction was his only prior conviction and that it affected his decision to testify on his own behalf, as demonstrated by his failure to do so at trial and by his statement at sentencing that he was innocent.

The state responds that this court is bound by the trial court's findings that defendant was not prejudiced and that the state did not delay to gain a tactical advantage. Specifically, the state argues that defendant had the burden to produce evidence that would support a conclusion that he was prejudiced and that the state delayed in indicting him for tactical reasons, and that he failed to meet that burden.

We review the trial court's denial of the motion to dismiss for pre-indictment delay for errors of law. *State v. Endres*, 196 Or App 197, 199, 100 P3d 784 (2004). The relevant factual findings of the trial court, if supported by the evidence, are binding on appeal. *State v. Hunter*, 58 Or App 99, 104, 647 P2d 943 (1982). In this case, as we have noted, there is no dispute as to the relevant facts; the only dispute is whether, as a matter of law, the trial court erred in denying defendant's motion to dismiss.

Ordinarily, time limits for filing formal charges are a matter of legislative prerogative, as expressed in statutes of limitation. *State v. Green*, 140 Or App 308, 315, 915 P2d 460

(1996). A charge brought within the statute of limitations may nevertheless violate the Due Process Clauses of the Fifth or Fourteenth Amendment to the United States Constitution, but only if the delay in bringing in the charge "caused substantial prejudice to [the defendant's] rights to a fair trial and * * * the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 US 307, 324, 92 S Ct 455, 30 L Ed 2d 468 (1971); *see also State v. Serrell*, 265 Or 216, 219-20, 507 P2d 1405 (1973) (to obtain a dismissal of an indictment based on preindictment delay, a defendant must show both that the delay "caused substantial prejudice" and that it was "an intentional device to gain tactical advantage over the accused").

In this case, the parties dispute both whether the state intentionally delayed indicting defendant to obtain a tactical advantage and whether that delay caused defendant substantial prejudice. But, because we conclude that defendant failed to establish the requisite substantial prejudice, we need not determine whether the state intentionally delayed indicting defendant.

In several cases, Oregon courts have addressed what is, or is not, "substantial prejudice" in the context of preindictment delay. In *Serrell*, the defendant sold narcotics to an undercover agent. He was indicted 141 days later. On appeal of his conviction, he argued that the state had all the necessary information concerning his crime as of the date of his sale to the undercover agent and that he was prejudiced by the delay in indicting him because it caused his inability to recall his whereabouts on the day of the sale. 265 Or at 217. The Supreme Court determined that the defendant's assertion about his inability to recall his whereabouts was insufficient to carry his burden to show that he was substantially prejudiced by the delay. *Id.* at 220.

In *Hunter*, the defendant was hired to kidnap a person's former girlfriend. The defendant attempted to do so, but the girlfriend escaped. The next day, the person who had hired the defendant was found shot to death. A few days later, the defendant was arrested and indicted for the kidnapping. He was also questioned regarding the murder and an attorney was separately appointed to represent him on

that matter. 58 Or App at 101. The defendant was tried and convicted of kidnapping six months later. Three months after that, following further investigation, the defendant was indicted for the murder. *Id.* At a pretrial hearing on the defendant's motion to dismiss on the ground of preindictment delay, the district attorney testified that the state had delayed for evidentiary, not tactical, reasons. *Id.* at 102-03. The trial court found that any prejudice to the defendant was "minimal" because he knew he was a suspect in the murder and because counsel had been appointed to protect his interests as to that crime. *Id.* at 104. Having determined that that finding was supported by the record, we affirmed. *Id.*

Most recently, in *Endres*, the defendant was arrested on drug charges. During the arrest, he produced false identification. No charges were brought pertaining to the false identification pending negotiations between the defendant and the district attorney about his cooperation in that matter and in three additional drug-related investigations. The discussions ultimately were unsuccessful. Approximately 18 months after his initial arrest, the defendant was indicted. He moved to dismiss the indictment, in part on due process grounds. The trial court granted the motion, and the state appealed. 196 Or App at 199-200. On appeal, the defendant argued that the delay had prejudiced him because it caused him and his family "substantial anxiety." *Id.* at 203.

We rejected that argument, explaining that a defendant's anxiety caused by delay is insufficient to demonstrate prejudice because any prejudice must pertain to the fairness of the trial, not to the stigma of public accusation. *Id.* We reversed because the defendant failed to produce any evidence of actual prejudice. *Id.*; *see also State v. Boots*, 94 Or App 713, 715-16, 767 P2d 450, *rev'd on other grounds*, 308 Or 371, 780 P2d 725 (1989) (where the defendant presented no evidence of prejudice caused by preindictment delay or evidence that the state delayed deliberately in order to gain a tactical advantage, the defendant's due process rights to a fair trial were not violated); *State v. Dike*, 91 Or App 542, 544-45, 756 P2d 657 (1988) (where the record did not show that the defendant was prejudiced because witnesses' testimony had changed, that he was unable to locate exculpatory witnesses, or that the district attorney intentionally delayed the

matter, the defendant's due process rights were not violated); *State v. Harris*, 37 Or App 431, 436, 587 P2d 498 (1978) (delay of three months between initial police questioning of the defendant and his arrest for robbery did not violate his due process rights by reason of impairing his ability to identify possible alibi witnesses; although the delay caused the defendant a "hardship" in presenting his alibi defense, the defendant was "on notice that he was suspect" and failed to preserve available evidence).

■■ Thus, "substantial prejudice" in this context is more than impaired memory of events, and more than anxiety about impending prosecution and trial. Furthermore, the existence of prejudice and its substantiality must be proved; it will not be assumed.

■ In this case, defendant asserts that the delay in indicting him substantially prejudiced him because the intervening conviction impaired his ability to testify without running the risk of impeachment. There is, however, a complete lack of evidence to support defendant's assertion. There was no offer of proof at trial, no evidence that he, in fact, intended to testify, and perforce, no evidence as to precisely what he had intended to say. Even assuming for the sake of argument that he actually intended to testify, we remain unable to assess the extent to which the conviction in North Dakota likely would have impeached the relevant testimony that he intended to offer. Indeed, even assuming for the sake of argument that the existence of the North Dakota conviction would have reduced defendant's effectiveness as a witness on his own behalf, we remain unable on the record before us to determine whether that would have *substantially* prejudiced his right to a fair trial. *Marion*, 404 US at 324-25.

We conclude that the trial court did not err in denying defendant's motion to dismiss.

Affirmed.