Argued and submitted October 1, 1993, reversed and remanded April 27, petition for
review denied July 19, 1994 (319 Or 406)

In the Matter of
Ebon Hallinen, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Appellant,*

*v.*

Ebon HALLINEN,
*Respondent.*

(85-733; CA A77722)

873 P2d 476

Janie M. Burcart, Assistant Attorney General, argued the
cause for appellant. With her on the brief were Theodore R.
Kulongoski, Attorney General, and Virginia L. Linder, Solici-
tor General.

Charles P. Denkers argued the cause and filed the brief for
respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

The state appeals from a juvenile court order that dismissed a delinquency petition with prejudice.[1] *Former* ORS 419.476(1); *former* ORS 419.561.[2] The sole issue is whether the state's nine-month delay in filing the petition violated child's due process rights. We hold that it did not, and reverse.

On June 18, 1991, police officers investigated a reported rape and burglary. The victim, then 14 years old, claimed that the acts had been committed by child, also 14, and another youth. The police were also advised of ongoing sexual abuse of the victim by her mother's boyfriend, Mark Martin. As a result of the allegations regarding Martin, the victim was made a ward of the court in July, 1991.

By August 24, 1991, the police had completed their investigation of the allegations against child and the other youth. The deputy district attorney conferred with the victim's court-appointed attorney and her counselor, and the three agreed that the victim was psychologically incapable of testifying. On that basis, the deputy district attorney delayed filing the delinquency petition against child.[3]

In May, 1992, the state determined, on the basis of further evaluations and the advice of the victim's attorney, that the victim was capable of testifying. It filed the delinquency petition on May 18, 1992, nine months after the completion of the investigation. Child's attorney moved to dismiss the petition on the ground that the state's delay in filing had violated child's due process rights.

---

[1] The petition alleged that child is within the jurisdiction of the juvenile court for acts which, if committed by an adult, would constitute first degree rape, first and second degree sexual abuse and two counts of first degree burglary. ORS 163.375; ORS 163.427; ORS 163.425; ORS 164.225.

[2] ORS 419.476 and ORS 419.561 were repealed by Oregon Laws 1993, chapter 33, section 373, and reenacted as ORS 419B.100, ORS 419C.005 and ORS 419A.200.

[3] The district attorney testified that his office's protocol is to receive a victim's report, conduct interviews, review the case, decide whether to proceed, interview the victim to determine willingness and ability to testify, and then file the petition. The office attempts to accomplish that process within one month. However, "for obvious reasons[, i]f we assess a child [victim] can't testify or the family want[s] us really not to do so, we're not going to file."

The juvenile court dismissed the delinquency petition with prejudice. It found that the state's decision to delay filing the petition was intentional and for the purpose of protecting the juvenile rape victim from having to testify before she was psychologically able. It concluded that such a delay was impermissible under *State v. Boots*, 94 Or App 713, 767 P2d 450, *rev'd on other grounds* 308 Or 371, 780 P2d 725 (1989),[4] which articulated the following rule:

> "The due process effect of preindictment delay is judged by a two-part test: 'A defendant must show both substantial prejudice to his right to a fair trial and that the delay was done intentionally to gain a tactical advantage.' *State v. Dike*, [91 Or App 542, 544, 756 P2d 657, *rev den* 306 Or 660 (1988)]." 94 Or App at 715.

Even assuming, *arguendo*, that a rule regarding preindictment delay is applicable to a juvenile proceeding, and further assuming that the state's delay was intended "to gain a tactical advantage," the facts do not support the juvenile court's conclusion that the delay substantially prejudiced child's right to a fair "trial." Child alleges that prejudice was established by his investigator's inability to locate several witnesses. However, there is no indication that the investigator's efforts would have been more fruitful had the investigation commenced earlier. The investigator testified that he had been able to locate only two of six witnesses named in the police reports, because "most of them" had moved and "it's difficult since these are juveniles that we're dealing with and I have no information as to the parents' name. And if they're residing with the parents, it's very hard to find [them]." One

---

[4] "The primary guarantee against bringing overly stale criminal charges is the statute of limitations." *State v. Serrell*, 265 Or 216, 219, 507 P2d 1405 (1973). However, the Due Process Clause of the Fifth Amendment to the United States Constitution has been interpreted to supply the additional protection that an indictment will be dismissed if it is shown that pre-indictment delay "caused substantial prejudice to [a defendant's] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 US 307, 324, 92 S Ct 455, 30 L Ed 2d 468 (1971). The *Marion* Court continued:

> "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances in each case." 404 US at 325.

of the located witnesses, a juvenile by the name of Arnold, spoke with the investigator and gave him the names of two additional youths who had allegedly heard the victim, who attended their school, make comments that implied that her sexual encounter with child had been consensual. The investigator testified that he could not find those youths because he did not have access to school records.[5] The investigator provided no explanation for his rather perplexing conclusion that, although he knew their names and the school they attended, he would not be able to locate the youths because he did not know their parents' names.

The juvenile court seems to have been influenced by the fact that child's lawyer had been allowed $400 for investigative fees, and when those funds were expended, the investigator "lost the opportunity to talk to other witnesses who might be of assistance."[6] However, child's attorney did not seek additional investigative funds.

On *de novo* review, we find that child's evidence suggests, at most, a failed investigation that bore no relationship to the timing of the filing of the petition. The investigator's belief that he could not contact the juveniles because he "didn't know where they lived" and did not know their parents' names would have thwarted his investigation even if he had begun it on August 24, 1991.

Reversed and remanded.

---

[5] Although our result is unaffected by it, we note that, in a motion for reconsideration of the order from which it now appeals, the state presented the names, dates of birth, addresses and phone numbers of both youths identified by Arnold. The state's motion stated that that information was gleaned by an investigator in "less than fifteen minutes."

[6] When asked whether there was any other avenue by which the remaining witnesses could have been located, the investigator responded: "Not that is accessible to me, no."